McCLANE'S ADMINISTRATRIX *vs.* SHEPHERD'S EXECUTRIX.

1. A plea of release is not void because it is not stated in the plea, or the answer in support of it, that the release was obtained freely and without fraud, when the bill contains no allegation of fraud.

2. Such issue cannot now be raised by special replication. The modern practice is to permit the complainant to amend his bill by inserting allegations which will raise the issue, and require the defendant to answer as to them.

3. The statute of limitations is a good plea to a bill for an account of trust funds, where the trust is not direct or express, but arises merely by implication.

The question in this cause was the sufficiency of the pleas.

*Mr. W. H. Vredenburgh,* for defendant.

*Mr. J. Parker,* for complainant.

THE CHANCELLOR.

Douglas McClane, the intestate, and husband of the complainant, in 1856, disappeared from his house under circumstances that convinced his friends that he was dead. The complainant and Joseph Shepherd, the defendant's testator, were appointed the administrators of his estate; they sold his personal property, and also part of his real estate under an order of the Orphans Court of Monmouth county to sell his lands for the payment of his debts. In 1857, Douglas McClane was discovered to be alive, and upon finding out the situation of affairs, he executed to Joseph Shepherd a power of attorney, dated March 16th, 1857, by which he authorized Shepherd to execute in his name deeds of conveyance of all his lands; approved and confirmed all the sales he had made, and all payments made to him, and authorized him to receive what might be due on sales; and also authorized him to pay any debts owed by McClane, and all expenses attending the sale of his property, and to retain to himself full payment of all commissions, fees, and expenses attending such sales, and also ratified all payments made by said administrators out of the moneys received.

McClane afterwards executed a release to Shepherd, dated October 13th, 1858, purporting to be made on a settlement of all accounts between them, and in consideration of $10,989, and thereby released and discharged him from all demands, both at law and in equity.

After this alleged settlement, both McClane and Shepherd died; Shepherd in 1862, McClane in 1866. And the bill is filed by McClane's administratrix against the executrix and heirs-at-law of Shepherd, for an account of the moneys received by him for the sale of the property of McClane, under the administration granted to him, and under the power of attorney.

To this bill the defendant pleads first the release, setting forth that all the moneys charged in the bill to have been received, had been paid to and settled with McClane in his lifetime, and that the release was executed in consideration

of $10,989, before that time paid to him at his request, and was executed under seal.

And the answer in support of the plea alleges that all moneys received by Shepherd, as charged in the bill, were paid to him, or as directed by him, before the date of said release.

It is urged that the plea of release is void, because it is not stated in the plea or the answer in support of it, that the release was obtained fairly and without fraud. The authorities cited in support of this position are *Daniell's Ch. Pr.* 694; *Story's Eq. Pl.*, § 796, 312; *Roche* v. *Morgell*, 2 *Sch. & Lef.* 720; *Phelps* v. *Sproule*, 1 *Mylne & Keene* 231.

The language of Lord Redesdale, in his opinion in the House of Lords in *Roche* v. *Morgell*, may seem to warrant the conclusion; but upon examining that case and the other cases cited in the above authorities, it will be found that in all, there were, in the bill, allegations of fraud or other matters which would, if true, have avoided the release, and that the cases only hold that it is necessary to deny, in the plea and in the answer in support of the plea, those allegations in the bill which, if true, would avoid the release. There are in this bill no allegations of fraud or of any other fact which, if true, would avoid this release. And the plea states the consideration of the release, and that it was under seal. The plea of release must be sustained as a good plea.

But the complainant asks leave to amend her bill, that she may allege that the release was fraudulent, and thus compel the defendant in her plea to deny the fraud, and in her answer in support of the plea to discover the facts as to the alleged fraud. The special replication formerly allowed, by which this issue might have been raised, has been long disused, and is no longer permitted; the practice is now to permit the complainant to amend the bill by inserting allegations which will raise the issue, and require the defendant to answer as to them. The application for leave to amend was made before the argument upon the plea, and it was agreed that it should not be waived by the argument. The

complainant must be allowed to amend, upon payment of costs.

It is contended that the plea of the statute of limitations is not good, because it relates to a trust; that Shepherd, in this case, was a trustee for McClane.

The statute of limitations is a good defence in equity as well as at law. When it does not, by its terms, apply to courts of equity, they have adopted it by analogy to the defence at law, in all cases in which it would be a defence in courts of law. But it is no defence in matters of a purely equitable nature, and of which courts of equity have an exclusive jurisdiction. Trusts are held to be within this exception, being matters of pure equity jurisdiction. But this exception is confined to express and technical trusts, and not to such as arise by implication.

In *Angell on Limitations*, § 166, it is laid down "that to exempt a trust from the bar of the statute it must be a direct trust, and must be of the kind belonging exclusively to the jurisdiction of a court of equity." In the case of *Allen's Adm'r* v. *Woolley's Ex'rs*, 1 *Green's Ch.* 209, Mrs. Allen had put all her property in the hands of Woolley, by a writing, directing that he should place the same at interest, and apply the interest and part of the principal, if necessary, to her support. The Chancellor says that "no time will bar the claim in case of a direct trust." But whether that trust was of such a character created the doubt. He held that it was "an express direct trust, to which no plea of the statute of limitations was applicable." "This is unlike a delegated power confided to a person for a single or limited object; it reached her entire property, related to her whole living, and by its very terms, was a continuing fiduciary engagement." The facts in that case which the Chancellor relied on as constituting a direct or express trust, do not exist in this. And he adopts the distinction taken in the cases he refers to, that the statute does not apply where the trust is not express or direct, but arises by implication merely. In that case the

*cestui que trust* most clearly could not have maintained a suit at law.

In *Goodrich* v. *Pendleton,* 3 *Johns. C. R.* 384, the money is stated to have been received from the government by the defendant, as agent and *trustee* for the complainant, which created a direct trust. Chancellor Kent, in a learned and well considered opinion in *Kane* v. *Bloodgood,* 7 *Johns. C. R.* 113, clearly recognises this distinction, and says in commenting on the judgment of Lord Macclesfield, in *Lockey* v. *Lockey, Prec. in Chancery* 518 : " The doctrine of this case is that the trusts which are not within the statutes, are those which are creatures of the court of equity, and not within the cognizance of a court of law, and that as to those other trusts which are the ground of an action at law, the statute is, and in reason ought to be, as much a bar in one court as in the other ;" and he approves and acts upon that doctrine. In *Farnam* v. *Brooks,* 9 *Pick.* 242, Chief Justice Parker, in delivering the opinion of the court, says: " This exception is confined to direct trusts created by deed or will, or perhaps by appointment of law, such as executorships or administrations. But cases of constructive trusts, resulting from partnerships and agencies and the like, are held to be within the statute." In *Robinson* v. *Hook,* 4 *Mason* 152, Justice Story says : " But as to cases of merely constructive trusts created by courts of equity, or cases which are treated for some purposes as implied trusts, to which however legal remedies are applicable, the doctrine cannot be admitted that the statute of limitations does not embrace them."

In this case there is no express or direct trust. None was created by the administrator's deeds ; they were simply and absolutely void, and the money received on them did not belong to McClane, but to the purchasers. When McClane authorized Shepherd to execute deeds confirming those sales, and directed the money before paid, should be credited on the new conveyances, and authorized Shepherd, as his attorney, to sell all the residue of his property, and to pay with money received, his debts, Shepherd was not thereby made

his trustee, but his agent. The money he had already received, and which, until the conveyances were confirmed, the purchasers could claim by their accepting the conveyances made by Shepherd as attorney, was freed from the claim of the purchasers, and was held by him as money had and received for the use of McClane. And if any money remained he held it as McClane's agent, and was bound to pay it to him. There can be no doubt but an action for money had and received, would lie at law for it. The law would raise a promise to pay it over under the circumstances of this case. If any trust whatever exists in this case, it is not a direct or express trust, but one arising by implication.

The statute of limitations is a good plea.